UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GEORGE ALLEN JR. and LONZETTA TAYLOR, | ) ) |
| Plaintiffs, | ) ) ) Case No. 4:14-cv-01398 RWS |
| v. | ) ) |
| THE CITY OF ST. LOUIS, MISSOURI, et al., | ) ) ) |
| Defendants. | ) |

# DECLARATION OF NICK BRUSTIN

**I, Nick Brustin, declare as follows:**

1. I am a partner of the law firm Neufeld, Scheck & Brustin, LLP. I am an attorney in good standing of all the bars of which I am a member. I have litigated federal civil rights actions involving claims of malicious prosecution, fabricated evidence, violations of *Brady* rights, coerced confessions, and *Monell* claims across the country for over 20 years.

2. I have personal knowledge of the facts set forth in this declaration and would testify competently to those facts if called as a witness.

3. On October 17, 2014, this Court granted my request to be admitted *pro hac vice* to the bar of this Court for the purpose of representing the Plaintiffs in this matter, George Allen and Lonzetta Taylor. [*See* Dkt. Nos. 9 & 10].

4. I submit this declaration in support of Plaintiffs' Motion to Disqualify Counsel, filed concurrently with this declaration.

**Plaintiff's Complaint and Defendants' Representation**

5. On August 12, 2014, Plaintiffs George Allen Jr. and Lonzetta Taylor filed their Complaint in this matter. [Dkt. No. 1].

6. The Complaint named the following defendants:
    a. The City of St. Louis ("the City");

- b. The five-members of St. Louis City Board of Police Commissioners ("the Board")[1] (Defendants Gray, Battle-Turner, Irwin, Switzer, and Slay);
- c. The Chief of Police of the St. Louis Metropolitan Police Department ("SLMPD");
- d. Five living employees and former employees of the SLMPD (Defendants Crow, James, Burford, Rowane, and Wilson); and
- e. Three deceased former employees of the SLMPD (Defendants Riley, Hart, and LaGates).

7. On October 21, 2014, an attorney from the St. Louis City Counselor's office entered an appearance on behalf of *only* the City. [*See* Dkt. Nos. 14].

8. That same day, the Missouri Attorney General and attorneys from the Attorney General's Office entered appearances on behalf of all defendants *except* the City and the deceased individual defendants (Riley, Hart, and LaGates). [*See* Dkt. Nos. 11, 13].

**Defendants' Motions to Dismiss**

9. On October 21, 2014, the City filed a motion to dismiss arguing that it had no control over or responsibility for the SLMPD or the Board during the alleged misconduct, and that the City did not assume the SLMPD or the Board's liabilities and obligations from that period. [Dkt. No. 16 at 3–4].

10. On November 17, 2014, the Missouri Attorney General's Office filed a partial motion to dismiss on behalf of the Board, the Chief of Police, and the living individual defendants (Crow, James, Burford, Wilson, and Rowane). [Dkt. Nos. 23, 24].

11. That same day, the Board and the living individual defendants answered the Complaint. [Dkt. Nos. 25–30].

12. After the parties completed briefing, the Court issued an order granting in part and denying in part the defendants' motions to dismiss. In relevant part, the Court declined to dismiss Plaintiffs' § 1983 claims against the City, the Board, or the individual defendants. [*See* Dkt. No. 52 at 9].

---

[1] Although Plaintiffs understand that the Board operated and controlled the SLMPD from the time of Mr. Allen's arrest through his exoneration, it appears that the Board is no longer operational. *See* MO. REV. STAT. § 84.010 (ordering the City to adopt an ordinance to assume responsibility, ownership, and liability as successor-in-interest for contractual obligations, indebtedness, and other lawful obligations of the Board); *see also* Missouri Boards & Commission, St. Louis City Board of Police Commissioners (last visited May 19, 2016), *available at*: http://boards.mo.gov/userpages/Board.aspx?121 (noting that the terms of four of five Board members have expired).

13. Following the Court's decision, the City of St. Louis and the SLMPD Chief of Police answered the Complaint. [Dkt. Nos. 57 & 58].

**The Deceased Defendants**

14. No attorney ever entered an appearance on behalf of the three deceased individual defendants—Detective Riley, Criminalist Hart, and Sergeant LaGates.

15. Accordingly, on November 14, 2014, Plaintiffs filed a motion requesting that the Court appoint defendants *ad litem* for each of the three deceased defendants. [Dkt. No. 22 at 1; *see also* Dkt. No. 35 (Plaintiffs' supplemental memorandum)].

16. Ostensibly on behalf of the Board and the living individual defendants, the Missouri Attorney General's Office filed an opposition to Plaintiffs' motion for appointment of defendants *ad litem*. [Dkt. No. 38]. That opposition argued that the Court should deny Plaintiffs' motion because the deceased defendants are not covered by insurance and because the State's Legal Expense Fund ("LEF") was is not available to pay any claim against the deceased Defendants. [*Id.* at 1–2].

17. The City did not respond to Plaintiffs' motion.

18. On May 26, 2015, the Court denied Plaintiff's motion for appointment of defendants *ad litem*, accepting the arguments raised by the Attorney General's Office. [Dkt. No. 52].

**Document Discovery and Defendants' Depositions**

19. Following the Court's denial of the motions to dismiss and the denial of the motion to appoint defendants *ad litem*, Plaintiffs propounded discovery requests on the City, the Board, and the living individual defendants (James, Burford, Crow, and Wilson).

20. In July 2015, Plaintiffs served the City, the Board, and each individual defendant with requests for production, interrogatories, and requests for admission.

21. Plaintiffs' requests for production included requests for documentation relating to the coverage or obligations of the State's LEF, communications regarding the LEF, liability insurance coverage, and the assets of the individual defendants. [*See, e.g.*, **Exhibit A-1** at 5–17 (request to Board), **Exhibit A-2** at 5–8 (request to Defendant James)].

22. Although the City, the Board, and the individual defendants all filed separate responses to Plaintiffs' discovery requests, the Board's responses and the individual defendants' responses (all of whom were represented by the Missouri Attorney General) were largely similar, both in terms of their objections and their substantive content.

23. For example, the Board and the individual Defendants submitted identical responses to Plaintiffs' requests to admit. [*Compare* **Exhibit B-1** (Board's response), *with* **Exhibit B-2** (Defendant James's response)].

24. On April 14 and 15, 2016, the parties conducted the first two depositions of this case. Plaintiffs' counsel deposed Defendant Terry James on April 14 and deposed Defendant Mark Burford on April 15.

25. Representatives of the City chose not to appear at either deposition.

26. Mr. Robert J. Isaacason, from the Missouri Attorney General's Office, represented both Defendant James and Defendant Burford at their depositions.

27. At the very outset of Defendant James's deposition, I confirmed that Defendant James understood that he was an individual defendant in this civil case, which, if successful, could result in a judgment against Defendant James for millions of dollars. [**Exhibit C** at 14:10–23].

28. Next, before asking questions about the substance of the case, I asked several pointed questions designed to obtain an answer regarding whether Defendant James was being indemnified.

29. In response to my questions, Defendant James repeatedly confirmed that he understood that in the event of a judgment against him, either the City or the State would pay all expenses and all damages. [Ex. C at 15:7–17:7].

30. In particular, the following questions and answers took place:

> Q. All right. What's your understanding as to what will happen if there's a judgment entered against you?
> **A. The city or the state will be – will cover me –**
> Q. Okay.
> **A. – cover my expenses.**
> . . . .
> Q: I take it it's your understanding, from speaking to sources either from the city or the state, that should you be found liable in this case and damages assessed against you, it's your understanding, based on those communications, that the city and/or the state will be paying all the damages assessed against you. Is that correct?
> **A. Yes.**
>
> Q. You've received those assurances?
> **A. (No audible response.)**
>
> Q. That's your understanding?
> **A. Yes.**

4

> Q. Okay. Have you received anything in writing to that effect?
> **A. No, I don't believe I received anything writing.**
>
> Q. Okay. You were just told that orally?
> **A. Well, there was a – there was a document that I read. I don't exact – I don't remember exactly what it was. But that was my understanding after I read it.**
>
> Q. And that's your understanding as you sit here today; that should any damages be assessed against you, should you be found liable and we receive damages, let's say for $5 million, you understand that the city and/or the state will be paying that?
> **A. Yes.**

[Ex. C at 15:7–17:7].

31. During these questions and answers, Defendant James's attorney, Mr. Isaacson, was present but made no attempt to correct the record or confer with his client.

32. Fully expecting that Mr. Isaacson would correct any mistakes or misstatements regarding indemnification before allowing Defendant James to continue testifying, after obtaining an answer regarding indemnification, I then proceeded to question Defendant James regarding the substance of the case.

33. During the course of his full day deposition, Defendant James admitted that in preparing for his deposition, he reviewed his own testimony from Mr. Allen's criminal proceedings, but did not review the testimony of any other defendant, any of whom could provide a viable defense against Defendant James's own liability. [Ex. C at 10:25–12:15, 52:8–18]. For example, Defendant James did not review the testimony of Defendant Criminalist Crow, whose forensic testing produced exculpatory testing resulting that Crow has admitted were not disclosed to Mr. Allen's criminal defense counsel. [**Exhibit D** at 3 (Crow's RTA responses)].

34. Defendant James explained that he reviewed only his own testimony because it was "the only [testimony] that was provided to [him]." [Ex. C at 52:8–18].

35. Defendant James similarly did not review any relevant *Monell* evidence, such as official policies or practices of the SLMPD, which could provide another potential defense by suggesting that his conduct was in accordance with official practice. [*See* Ex. C at 10:25–12:25 (detailing preparation)]. As a result, although Defendant James did not believe any SLMPD policies were violated, [*id.* at 27:12–19], he repeatedly admitted that he was not familiar with the relevant SLMPD policies in question, [*e.g.*, *id.* at 96:2–11, 184:8–23, 227:1–20].

36. The next day, again with Mr. Isaacson representing the deponent, Plaintiff's counsel deposed Defendant Burford. [**Exhibit E** at 4–5].

5

37. Counsel questioned Defendant Burford regarding indemnification and Defendant Burford testified that he had the same understanding as Defendant James—he assumed that if this civil case were to result in a judgment against him, either the City or the State would pay any damages. [Ex. E at 31:23–33:18].

38. Again like Defendant James, although Defendant Burford reviewed his own testimony in preparation for this deposition, he did not review the testimony of key witnesses. [*See* Ex. E at 9:11–10:10, 145:23–146:1, 166:2–4, 172:3–6]. Defendant Burford did not testify to reviewing any *Monell* evidence, [*see id.* at 9:11–11:22, 233:9–18, 243:1–3], and a result, like Defendant James, Defendant Burford did not know many of the relevant SLMPD policies, [*see id.* at 205:12–20, 243:1–3].

39. Although permitted to by law, Defendants James and Burford did not take the opportunity to observe one another's depositions. In other words, Defendants James and Burford did not take any of the basic steps (either during preparations or during the depositions) that any civil defendant who was not being indemnified would normally take in contemplation of potential cross-claims and other defenses that could implicate codefendants.

**The State's Declaratory Judgment Action**

40. On Friday, April 15, 2016 at 11:32 a.m., *while* Plaintiffs' counsel was actively deposing Defendant Burford, the Missouri Attorney General's Office filed a petition for declaratory relief in the Circuit Court of the City of St. Louis. [**Exhibit F**].

41. That declaratory action named the State of Missouri as the plaintiff and named as defendants: the City of St. Louis, George Allen and Lonzetta Taylor, the Board, the SLMPD Chief of Police, and the living individual defendants in the *Allen* matter (James, Burford, Crow, and Wilson). [Ex. F at 3–6]. In other words, the Attorney General's Office named as *defendants* to the declaratory action all of the parties that it was actively representing in the *Allen* matter (including Defendants James and Burford).

42. In the declaratory action, the State of Missouri (represented by the Missouri Attorney General's Office) seeks "a declaratory judgment finally adjudicating the rights and responsibility of the parties with regard to whether the LEF or the City of St. Louis must pay any potential judgment or settlement in the Allen Federal Case." [Ex. F at ¶ 37]. In particular, the State seeks a declaration from the Court "[t]hat any judgment against, or settlement on behalf of, [the Board, the Chief of Police, or the individual defendant officers in the *Allen* action], cannot be paid from the State Legal Expense Fund." [*Id.* at ¶ 48(a)].

43. In contradiction to Defendant James's and Defendant Burford's deposition testimony regarding indemnification, the State's petition for declaratory relief alleges that although the Attorney General's Office was providing legal representation to the Board, the Chief of Police, and the individual defendants, "at no time did the Attorney General's Office or

any other State office or official advise [these defendants] or the City of St. Louis that the LEF would be responsible for any judgment against [these defendants]." [Ex. F at ¶ 31].

44. The State's petition takes the position that "the City of St. Louis is responsible for any judgment or settlement in the Allen Federal Case, including any portion borne by the Police Defendants." [Ex. F at ¶ 35].

**The State's and the City's positions Regarding Indemnification**

45. Plaintiffs' counsel did not learn of the State's declaratory action from the Attorney General's Office. Instead, counsel learned of the action through public sources on April 19, two business days after the second of the depositions.

46. Upon reviewing the contents of the State's petition, including the State's representation that, contrary to Defendants James's testimony, the State was *not* indemnifying the individual defendants, I immediately contacted Mr. Isaacson at the Attorney General's Office to discuss the apparent contradiction between the State's position and the sworn testimony provided by Defendants James and Burford at their depositions.

47. Following my conversation with Mr. Isaacson, I made multiple calls to senior attorneys at the Missouri Attorney General's Office and the St. Louis City Counselor's Office in order to determine the State's and the City's respective positions regarding indemnification of the individual defendants.

48. During these conversations, the State and the City took positions on indemnification that were in sharp conflict with Defendants James's and Burford's testimony.

    a. The State took the position that it will only indemnify the individual defendants up to $1,000,000 (and no more) *if* declaratory action is decided against the State. If the State succeeds in the declaratory action, the State's position is that it will not indemnify the individual defendants at all.

    b. The City likewise has made no commitment to indemnify the individual defendants.

49. Following these phone calls, Plaintiffs' counsel, Farhang Heydari, obtained written confirmation of the State's and the City's positions. [*See* **Exhibit G** (Farhang Heydari April 25, 2016 email to Mr. Leupke, Missouri Attorney General's office); **Exhibit H** (Farhang Heydari April 26, 2016 email to Mr. McDonnell, City Counselor's office)].

50. As documented in Mr. Heydari's April 25, 2016 email, [Ex. G], the State's position regarding indemnification of the individual defendants is as follows:

    a. If the State is <u>successful</u> in the declaratory action concerning the LEF—that is, if the State obtains a judgment declaring that Missouri statutes <u>prohibit</u> the use of LEF funds to pay any judgment in the *Allen* case—then the State will not use any

funds (either from the LEF or any other source) to indemnify the individual defendants against any judgment in the *Allen* case.

b. If the State is <u>unsuccessful</u> in the declaratory action—that is, if it is determined that the State <u>must</u> use LEF funds to pay a judgment in the *Allen* case—then the State will indemnify the officers only up to $1,000,000 and will not indemnify the officers for any judgment amount exceeding $1,000,000. Thus, if Mr. Allen obtains a $20,000,000 judgment against Defendant James and the City prevails in the declaratory action, then the State would pay $1,000,000 of the judgment using the LEF but Mr. James would be personally liable for the remaining $19,000,000 plus court awarded attorneys' fees and costs.

51. As noted in that same email, the State's positions would be no different if the City refuses to indemnify the individual defendants. [Ex. G].

52. As documented in Mr. Heydari's April 26, 2016 email to Mr. McDonnell, [Ex. H], the City's position regarding indemnification of the individual defendants is as follows:

    a. The City has not yet made any commitment to indemnify any of the individual defendant officers.

    b. The City's position is that a decision on indemnification is premature at this time given that the declaratory action regarding the State LEF is still pending.

    c. Although some of the individual defendant officers are current City employees, the City's position is that any potential conflict regarding indemnification implicates only the State and the individual defendants, not the City.

53. In a subsequent May 4, 2016 email to Mr. McDonnell, Mr. Heydari confirmed that it is the City's position that it has no duty to defend any of the individual defendant officers under any circumstances. [**Exhibit I**].

**I declare under the penalty of perjury that the forgoing is true and correct and to the best of my knowledge.**

**Dated: May 20, 2016**                              **Respectfully submitted,**

                                                     /s/ Nick Brustin
                                                     Nick Brustin, *pro hac vice*

                                                     NEUFELD SCHECK & BRUSTIN, LLP
                                                     99 Hudson St., 8th Floor
                                                     New York, NY 10013
                                                     (212) 965-9081
                                                     Nick@nsbcivilrights.com

## **CERTIFICATE OF SERVICE**

       I hereby certify that on May 20, 2016, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

                                      /s/ Nick Brustin

                              *ATTORNEY FOR PLAINTIFFS*