# Exhibit E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GEORGE ALLEN, JR. and
LONZETTA TAYLOR,

        Plaintiffs,

V.                    Case No. 4:14-cv-01398 RWS

THE CITY OF ST. LOUIS,
MISSOURI, ET AL.,

        Defendants.

DEPOSITION OF LIEUTENANT MARK BURFORD
TAKEN ON BEHALF OF THE PLAINTIFF
APRIL 15, 2016
10:00 A.M. - 3:08 P.M.

TRACI M. MERTENS, CSR, RDR, CRR
CSR NO. 084-003234
CCR NO. 857

1                    A P P E A R A N C E S

2

3         The Plaintiffs were represented by Mr.
   Farhang Heydari of the law offices of Neufeld,
4  Scheck, & Brustin, LLP, 99 Hudson Street, 8th Floor,
   New York, NY 10013.
5

6

7
          The Defendants were represented by Mr.
8  Robert J. Isaacson of the Attorney General's Office,
   815 Olive Street, Suite 200, St. Louis, MO 63101.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          IT IS HEREBY STIPULATED AND AGREED by and
between counsel for the PLAINTIFF and counsel for
2   the DEFENDANTS that this deposition may be taken in
shorthand by Traci M. Mertens, a Certified Realtime
3   Reporter, Certified Shorthand Reporter and Certified
Court Reporter, and afterwards transcribed into
4   typewriting, and the signature of the witness is
reserved by agreement of counsel and the witness.

5

6              LIEUTENANT MARK BURFORD,

7   of lawful age, being produced, sworn and examined on
the part of the Plaintiff, deposes and says:

8

9   EXAMINATION BY MR. HEYDARI:

10      Q.   Morning.

11      **A.   Morning.**

12      Q.   Lieutenant Burford?

13      **A.   Yes.**

14      Q.   Lieutenant Burford, good to meet you.

15           Can you state your full name for the

16  record, please?

17      **A.   Mark Burford, B-U-R-F-O-R-D.**

18      Q.   Lieutenant Burford, do you have any health

19  conditions or are you on any medications that might

20  affect your ability to testify today?

21      **A.   No.**

22      Q.   You're a Lieutenant now.  You joined the

23  police force in?

24      **A.   1977.**

25      Q.   1977.  So you have testified, I'm sure,

1  **A.  No.**

2  Q.  No lawsuits that you brought?

3  **A.  No.**

4  Q.  No?  Okay.  We found some tax cases in the

5  last few years.  Would those maybe have been your

6  son also?

7  **A.  Could be.  If it's tax cases it had to be**

8  **him, not me.**

9  Q.  2009, '11, '13, '14?

10  **A.  Had to have been Junior.**

11  Q.  Lieutenant Burford, can you tell me what

12  documents you reviewed to prepare for your testimony

13  today?

14  **A.  I looked at a report that involved the**

15  **initial day that we stopped George Allen, and Herb**

16  **Riley wrote a supplemental report.  I reviewed --**

17  Q.  You read that full report?

18  **A.  Yes.**

19  Q.  It's about seven pages or so, something

20  like that?

21  **A.  Something like that; six, seven.**

22  Q.  Anything else?

23  **A.  Interrogatories.**

24  Q.  Those are the ones that I sent you -- that

25  we sent you in this case?

1  **A.   Yes.**

2  Q.   Okay.  Anything else?  Testimony, maybe?

3       MR. ISAACSON:  Do you want me to jump in?

4       Tell him everything you remember.

5  Q.   (By Mr. Heydari) Did you review some

6  testimony, maybe?

7  **A.   Oh, yeah.  I'm sorry.**

8  Q.   Okay.

9  **A.   The transcript of my testimony in that**

10 **case -- in the case.**

11 Q.   You know we deposed Terry James yesterday.

12 **A.   I heard that, yes.**

13 Q.   Your former partner.

14 **A.   Yes.**

15 Q.   He mentioned a few other things that he

16 had reviewed.  I'm going to ask you if you maybe

17 reviewed them also just to jog your memory.

18 Stipulated facts from the habeas proceedings or the

19 habeas decision?

20 **A.   I believe I read those, yes.**

21 Q.   Okay.

22      THE WITNESS:  Did I read the habeas?

23      MR. HEYDARI:  Please go ahead.

24      MR. ISAACSON:  I -- I don't -- you can

25 correct me if I'm wrong.  I don't believe you read

1  them prior to the deposition.

2          THE WITNESS:  Okay.

3          MR. ISAACSON:  You have with regard to

4  providing answers to discovery reviewed them.

5      Q.  (By Mr. Heydari) I see.  So anything that

6  you reviewed in connection with this case --

7      **A.  Yes.**

8      Q.  -- I'd want to know about.

9          Also, Mr. James told us that he reviewed

10 the transcript and the audio of George Allen's

11 confession.  Was that something you looked at at any

12 point recently?

13     **A.  No.**

14     Q.  Any other documents that you guys can

15 think of?

16         MR. ISAACSON:  There was also the Court's

17 order with regard to the habeas, again, correct me

18 if I'm wrong, not with regard to the deposition but

19 with regard to preparing discovery responses, and

20 you looked at some trial exhibits from yesterday.

21         THE WITNESS:  Yes.

22         MR. HEYDARI:  Okay.

23         MR. ISAACSON:  You can go through those

24 things.

25     Q.  (By Mr. Heydari) Can you tell me everyone

1  today?

2  **A.  Yes.  It was just -- just the other day.**

3  **I don't remember what day it was.**

4  Q.  So earlier this week, maybe --

5  **A.  This week.**

6  Q.  -- or the week before?

7  **A.  There was a couple more times at the**

8  **station we met, so probably in the area of six we**

9  **met in person.**

10  Q.  Okay.

11  **A.  And then phone calls, I don't know how**

12  **many.**

13  Q.  And during those meetings or phone calls,

14  was anybody else present?

15  **A.  No.**

16  Q.  Just the --

17  **A.  Well, the first time we met, there was a**

18  **-- another attorney, and I don't remember her name.**

19  Q.  That's fine.  As long as she was another

20  attorney.  No one else was present for any of those

21  calls or meetings?

22  **A.  No.**

23  Q.  Okay.  Yesterday at his deposition,

24  Mr. James told us that he understands that if he's

25  found liable in this suit, if damages -- you

1  understand this is a civil suit seeking damages,
2  correct?
3      A.   Yes.
4      Q.   He's already -- George Allen has already
5  been released, that phase is done, and now he's
6  seeking compensation for the time in prison.
7      A.   Yes.
8      Q.   You understand that.  Mr. James told us
9  that it's his understanding that if he's found
10 liable, if this case goes to trial and a jury finds
11 that he engaged in misconduct or however it happens
12 that either the city or the state or the county is
13 going to cover his damages.  Do you have a similar
14 understanding?
15     A.   That's my assumption, yes.
16     Q.   Okay.  And that -- your assumption is
17 based on?
18     A.   Just history with the police department,
19 what's happened in the past with other officers.
20     Q.   So you mean other lawsuits against other
21 officers?
22     A.   Other officers, yes.
23     Q.   Yeah.  And in all those cases, the city or
24 the county, the state, whoever it was, covered the
25 -- covered any judgment against him?

1     **A.    To my knowledge, yeah.**

2     Q.    To your knowledge.  Do you have -- can you

3 recall any incident where an officer's damages

4 weren't covered?

5     **A.    I don't know of any.**

6     Q.    You don't know of any.  And you've been a

7 Police Officer for --

8     **A.    38 years.**

9     Q.    -- 38 years.  All with the -- and we'll go

10 through your -- your history in more detail.

11     **A.    Uh-huh.**

12     Q.    But 38 years all with the Metropolitan

13 Police Department?

14     **A.    Yes.**

15     Q.    And so it's your understanding based on

16 that history that your damages could be covered

17 also?

18     **A.    I'm under the assumption, yes.**

19     Q.    All right.  Lieutenant -- sorry.  I

20 apologize if I call you Mr. Burford, but I might

21 slip in and out.

22         Lieutenant Burford, let's talk a little

23 bit about your personal background.  Are you from

24 the area?

25     **A.    Yes.**

1  someone you were on the lookout for?

2      A.   Yes.

3      Q.   Because you knew that he lived in that
4  area?

5      A.   Yes.

6      Q.   And so you thought that -- so you stopped
7  George Allen, you and Terry James.  Do you remember
8  whose decision -- I'm sorry.  You and Terry James
9  stopped George Allen on March 14th, 1982, correct?

10     A.   Yes.

11     Q.   Do you remember whose decision it was to
12 stop him?

13     **A.   No.  Terry probably seen him first since**
14 **he was a passenger, and I was driving.**

15     Q.   Did you usually drive when you guys rode
16 patrol?

17     **A.   We took turns.**

18     Q.   You took turns.  But you remember that day
19 that you were driving?

20     **A.   Pretty sure.**

21     Q.   Is that your memory, or you've seen that
22 somewhere?

23     **A.   Well, I seen that because -- what made me**
24 **think of that is in the -- in the transcript of my**
25 **testimony, I say that I went back, so if I went**

1  **back, I was probably the driver.**

2     Q.   What do you mean, you went back?

3     **A.   When the commander called and said one of**

4  **us had to leave and come back in service, I went**

5  **back in service, and then there was another portion**

6  **in my transcript where I say that -- when asked**

7  **about the rights, I said Terry James was sitting**

8  **next to me in the passenger seat, so that gave me**

9  **the indication I was driving.**

10    Q.   Okay.  So you don't remember that; it's

11  just something that you've seen?

12    **A.   Seen and recollected my memory, yes.**

13    Q.   You saw it, it jogged your memory --

14    **A.   Yes.**

15    Q.   -- and now you remember it?

16    **A.   Yes.**

17    Q.   Okay.  So Terry James saw George Allen

18  first.  He made the decision to stop him, correct?

19    **A.   More than likely, yes.**

20    Q.   More than likely.  But you made the

21  decision together --

22    **A.   Yes.**

23    Q.   -- to arrest him?

24    **A.   Yes.**

25    Q.   That's something you would have done?

1     **A.   Uh-huh.**

2     Q.   Okay.  You remember you were there?

3     **A.   I didn't remember I was there until I read**

4 **the transcript from my testimony.**

5     Q.   And so I take it you don't recall if you

6 took notes or didn't take notes?

7     **A.   No.  I didn't take no notes, I'm sure.**

8     Q.   You're sure you didn't take any notes?

9     **A.   Yeah.**

10    Q.   Okay.

11    **A.   It wasn't my case at that time, so I had**

12 **no reason to.**

13    Q.   I take it if Miss LaRose -- if Detective

14 LaRose had asked you to take notes, of course, you

15 would have taken notes?

16    **A.   Yes.**

17    Q.   So presumably either she -- presumably she

18 didn't ask you; otherwise, you would have?

19    **A.   Yes.**

20    Q.   And so either she was taking notes

21 herself, or she didn't feel that notes were

22 necessary?

23        MR. ISAACSON:  Let me just object to the

24 question as speculative.

25        Go ahead.

1  whether he made admissions at that point or denials?

2  **A. Yes.**

3  Q. Okay. Did you read Pam LaRose's -- have

4  you read any testimony about Pam LaRose's interview

5  or interrogation of George Allen?

6  **A. No.**

7  Q. I could show you the testimony if -- if

8  you'd like, but I'll represent to you -- you know

9  what? Actually, I'm just going to show it. I don't

10 want to get the words wrong.

11         MR. HEYDARI: Have we marked the joint

12 statement?

13         MR. ISAACSON: No.

14         MR. HEYDARI: Exhibit 13, please.

15         (Exhibit 13 was marked for

16 identification.)

17    Q. (By Mr. Heydari) Do you recall that

18 Detective LaRose also started asking Mr. Allen

19 questions about other rapes that he might have

20 committed in the area?

21    **A. She may have.**

22    Q. Do you recall it?

23    **A. No, I don't.**

24    Q. Okay. So you -- she may have asked those

25 questions, but you don't recall whether she did or

1  foundation, and it's speculative.

2         Go ahead.

3     A.   I would think so, yes.

4     Q.   (By Mr. Heydari) And -- well, you think

5  so, or do you think they're required to do write it

6  down?

7     A.   I think they're --

8         MR. ISAACSON:  Same objection.

9         Go ahead.

10    A.   I think they would put it down in notes,

11 yes.

12    Q.   (By Mr. Heydari) Okay.  I'm asking you

13 something a little different.  Especially if a

14 suspect is arrested later in the day for a rape and

15 murder, a Detective would be required to make a note

16 -- make a report of their prior interview, correct?

17        MR. ISAACSON:  Objection; foundation.

18        Go ahead.

19    A.   I would think so, but I don't know what

20 the policy was for that unit at the time.

21    Q.   (By Mr. Heydari) Well, you've been a

22 Detective, sir?

23    A.   Uh-huh.

24    Q.   37 years --

25    A.   Uh-huh.

1       **A.    No.**

2       Q.    When you took him to the holdover cell, he

3  wasn't doing anything out of the ordinary?

4       **A.    No.**

5       Q.    He exhibited absolutely no criminal

6  behavior whatsoever other than having shaved

7  eyebrows?

8       **A.    No.**

9       Q.    Okay.  Have you ever used hypnosis

10 before --

11      **A.    No.**

12      Q.    -- as a Police Officer?

13      **A.    No.**

14      Q.    Have you ever heard of other officers

15 using it?

16      **A.    No, I hadn't.**

17      Q.    Excuse me?

18      **A.    I hadn't, no.**

19      Q.    You hadn't, but now you have?

20      **A.    I read it in one of these.**

21      Q.    Oh, I see.  So before I get to that, I

22 want to show you -- I'll show you something.

23            MR. HEYDARI:  If you want to take a break,

24 this could be a good time.  It's going to take me a

25 minute to find something.

1  Q.  Do you know anything about the department
2  policies with regard to the use of polygraphs?
3  **A.  Not really.**
4  Q.  Do you think it's possible -- well, let me
5  ask you this.  If a polygraph is used on a suspect,
6  I suppose on a witness, is there any question in
7  your mind that the prosecutor needs to be told about
8  that?
9  **A.  I -- I believe they should be told.**
10 Q.  So no question in your mind that that
11 would have been required?
12 **A.  Yes.**
13 Q.  Okay.  Do you recall learning that George
14 Allen was asked to strip naked at some point after
15 his interrogation?
16 **A.  That one supplemental report indicates it.**
17 **I didn't know that had happened.**
18 Q.  Okay.  So you weren't there for that
19 happening?
20 **A.  No.**
21 Q.  So it must have happened at some point
22 after you left?
23 **A.  Yes.**
24 Q.  Have you ever heard of that happening
25 before in an investigation?