**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE ALLEN JR. and LONZETTA TAYLOR, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:14-cv-01398 RWS |
| v. | ) ) | |
| THE CITY OF ST. LOUIS, MISSOURI, et al., | ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY

Confronted with evidence of their own failures in this case, opposing counsel doubles down in their attempt to mislead this Court and the parties, including their own clients, as to whether the individual Defendants will be indemnified. The State argues that its position vis-à-vis indemnification is consistent with the individual Defendants' understanding, which is that "either the City of St. Louis or the State of Missouri will pay any judgment that might conceivably be entered against them in this case." (State Br. at 4.) If this is accurate and not misleading, then the State should sign a stipulation to this effect. Yet it continues to withhold its assent to such an agreement. Because the State's (and City's) refusal to guarantee that the individual Defendants will be indemnified raises multiple *actual* conflicts of interest that cannot be waived, disqualification is required.

**A. Despite their repeated misleading suggestions to the contrary, neither the City of St. Louis nor the State of Missouri have agreed to indemnify the individual Defendants.**

Defendants and the State of Missouri suggest that there are no conflicts in this case because the individual Defendants will be indemnified by either the City or the State of Missouri as a result of the declaratory judgment action. (*See* Def. Br. at 2, 10; State Br. at 4–6.) If this were true,

1

Plaintiffs would take the position that the conflicts may be waived and would withdraw this motion. But it is misleading, at best.

Contrary to what the State claims, the declaratory judgment action does not by its express terms "seek[] a judicial declaration of who as between the City of St. Louis and the State of Missouri will be responsible for the payment of any judgment that may be entered against the Defendant Police Officers in this case." (State Br. at 4.) Rather, the action merely seeks a declaration that any judgment or settlement in this case "cannot be paid from the State Legal Expense Fund." (*See* Decl. J. Action, *Dkt.* 79–9 at 13.) In other words, if the State succeeds, it will likely obtain a declaration that one source of funds—the SLEF—may not be used to pay any such judgment or settlement. But that does not mean that, in the event the SLEF is found to be off limits, the City will step in and agree to indemnify the Defendants, or will be ordered to do so by the state court.[1] In fact, the City represented to Plaintiffs' counsel that it has not made any commitment to indemnify the individual Defendants, and that it has no duty to indemnify them under any circumstances. (*See* Brustin Decl., *Dkt.* 79–1 at ¶¶ 48–49, 52–53.) And in the event the State is successful in its declaratory action but the City declines to indemnify the individual defendants, the State's position is that it, too, will decline to indemnify the individual defendants using *any* source of funds, the SLEF or otherwise. (*See* Brustin Decl., *Dkt.* 79–1 at ¶ 50(a).) Thus, Defendants' suggestion that "any fair reading of the State of Missouri's Petition in the case is that the outcome will be a court order declaring that either the City of St. Louis or the State of Missouri

---

[1] Although the State points to language in the declaratory judgment action asserting that it sought a judgment "adjudicating the rights and responsibilities of the parties with regard to whether the [SLEF] or the City of St. Louis must pay any potential judgment," neither Defendant nor the State specify the legal authority under which the court could order the City to indemnify the individual Defendants (as opposed to merely remove the SLEF as a source of funding).

2

will indemnify the Defendants," (Def. Br. at 10), is belied, not only by the express language of the state court action, but by the representations of counsel for the City and the State.

Nor has the State provided any assurance that the individual Defendants will be indemnified by the State even if the State *loses* the declaratory action. If the state court rules that the SLEF may be used to pay a judgment in this case, there is a question whether, under Missouri law, money from the SLEF may be used to cover judgments that exceed one million dollars.[2] Plaintiffs therefore sought clarification from the State that it will fully indemnify the officers, whether or not the ultimate judgment or settlement exceeds $1 million. To date, the State has declined to provide any such assurance. (*See* Brustin Decl., *Dkt.* 79–1 at ¶¶ 48–50.) Instead, in a footnote in its response, the State notes that the Declaratory Judgment Action it filed "seeks no determination that any such limits exist or [sic] applicable." (State Br. at 5 n.2.) But this is irrelevant. The existence (or not) of such a cap is not dependent on the outcome of the State's declaratory judgment action, and Plaintiffs have never claimed otherwise. This does not change the fact that, in the event the State loses the declaratory judgment action (and the SLEF can therefore be used to pay a potential judgment), the conflict is only waivable if the State agrees it will indemnify the individual Defendants for the full judgment or settlement, regardless of the source of the funds, and regardless of any caps on the SLEF. The State has yet to do so.

Plaintiffs do not doubt that ultimately, either because of the positions they have already taken in this case or because of other pressures, the State or City will eventually be forced to indemnify the individual Defendants against liability. But that does not change the fact that there is a disqualifying conflict today, caused by the State taking positions consistent with its ongoing

---

[2] *See* Mo. Rev. Stat. § 105.726(3) ("…the commissioner of administration shall reimburse from the legal expense fund the board of police commissioners … for liability claims … up to a maximum of one million dollars per fiscal year.")

3

efforts to evade its duty to indemnify. Plaintiffs brought this motion precisely because they could not obtain assurances from the State or the City that "either the City of St. Louis or the State of Missouri will indemnify the Defendants." (Def. Br. at 10; *see also* State Br. at 6.) And after Defendants and the State filed their response briefs, Plaintiffs once again reached out to Defendants, the State, and the City, seeking an agreement among all parties that either the State or the City will indemnify the individual officer defendants for any and all damages, consistent with the indications in the opposing briefs. (*See* Email from Farhang Heydari, Exhibit J.) To date, neither the City nor the State has assented to such an agreement. In the absence of an agreement by the State and the City that either or both will fully indemnify the individual officer defendants in this case for all damages, fees, and expenses, whether determined by settlement or judgment, and regardless of any possible caps or limits on the SLEF, the disqualifying conflicts of interest remain.

**B. There are several actual conflicts in this case, starting from the State's taking positions adverse to the financial interests of its clients.**

The filed responses claim that Defendants' interests are not adverse, and that Plaintiffs' motion is based only on *potential* rather than *actual* conflicts, because: (1) individual Defendants do not intend to provide support for Plaintiffs' *Monell* allegations; (2) the Board Defendants do not intend to argue the individual Defendants acted outside the scope of their employment; (3) the individual Defendants do not intend to assert any wrongdoing on the part of the other individual Defendants; and (4) the State and the Missouri Attorney General's Office, like the Defendant Officers, want a defense verdict. (Def. Br. at 4–5, 8–10; Stat Br. at 2.). These arguments misunderstand the nature and extent of the conflict, and fail.

Defendants' argument that there are only *potential* conflicts in this case glosses over critical facts from which the most straightforward *actual* conflict has already materialized. (*See, e.g.*, Def.

4

Br. at 4–5, 6, 8–9; State Br. at 2.) Specifically, the State has not only refused to indemnify the individual Defendants, but is currently seeking via its declaratory judgment action—by and through the Missouri Attorney General's Office, which also represents Defendants in this case—to remove a source of funds for payment of any judgment or settlement against them. (*See* Pls. Br. at 9–11.) This in itself constitutes an adverse position taken by one client of the Missouri Attorney General's Office against the financial interests of its other clients, and is an actual conflict of interest requiring disqualification, absent an agreement that ensures the individual Defendants will be indemnified regardless of the outcome of that action. (*See* Pls. Br. at 11.) *See, e.g.*, *United States Fidelity and Guaranty Co. v. Louis A. Roser Co., Inc.*, 585 F.2d 932, 939 (8th Cir. 1978) ("It is axiomatic that an attorney cannot represent two clients whose interests are actually, as opposed to potentially, conflicting").

Further, the potential conflicts among the concurrently-represented Defendants must be viewed in light of the State's position vis-à-vis indemnification—it is precisely because the State is actively seeking to escape its indemnification obligations that concurrent representation of Defendants with potentially conflicting interests requires disqualification. Thus, Defendants' reliance on *Meidinger v. Powell*, 2014 WL 1653127 (D.S.D. 2014), and the fact that there are many other cases where police officer defendants and their employing entity are represented by the same counsel, (Def. Br. at 5–7), misses the mark. In *Meidinger* (as Defendants note), the defendant officers *were* indemnified, as is the case in the vast majority of jurisdictions as a matter of course. *See, e.g.*, Joanna C. Schwartz, *Police Indemnification*, 89 N.Y.U. L. Rev. 885, 890 (2014) (finding based on a study of police indemnification practices across the country that "Police officers are virtually always indemnified."). Contrary to what Defendants suggest, Plaintiffs do not seek "an automatic rule that attorneys employed by municipalities are precluded from

5

defending municipalities and individual officers in actions under § 1983."[3] (Def Br. at 7.) But even the cases cited by Defendants in support of their argument that there is no automatic rule precluding such concurrent representation acknowledge that the refusal to indemnify creates an *actual*, and disqualifying, conflict. For example, in *In re: Op. 552 of Advisory Comm. on Prof'l Ethics*, the court noted that that "in the case of an actual conflict in a § 1983 action involving multiple representation (*for example, where a governmental body refuses to indemnify its co-defendant officials or employees*) consent of the parties to joint representation will not satisfy the requirements of *RPC* 1.7." 507 A.2d 233, 236–38 (N.J. 1986) (emphasis added). And in *Granberry v. Byrne*, the court justified its finding that "no actual conflict has manifested itself" by noting that the indemnifier had "at no point…express[ed] any intent to escape potential indemnification obligations…." No. CIV.A. 11-4329, 2011 WL 4852463, at *5 (E.D. Pa. Oct. 13, 2011).

Because of the uncertainty regarding indemnification, it is not sufficient for Defendants to flatly assert that there is no conflict because parties do not intend to take positions that are odds with one another. Defendants assert, for example, that the individual Defendants will not present evidence they were acting pursuant to a policy because it is unlikely that their reliance on such a policy would render their actions objectively reasonable and result in their obtaining qualified immunity with respect to claims alleged by Plaintiffs. (Def. Br. at 4–5 n.1.) But even assuming this were true, surely a conflict-free counsel representing an un-indemnified individual officer

---

[3] Defendants claim that *Minneapolis Police Officers Fed'n v. City of Minneapolis*, 488 N.W. 2d 817 (Minn. Ct. App. 1992), which Plaintiffs cited for a cogent analysis of this issue (Pls. Br. at 14), is inapposite because "[i]n that case, the court adopted the blanket position that in every case there is an inherent conflict in every such representation…." (Def. Br. at 7.) In fact, however, that case rejected a blanket rule, noting that "[t]he majority of federal district and state courts that have considered the issue have *also* rejected a per se disqualification in favor of a case-by-case determination." *Id.* at 820 (emphasis added). Instead, the court acknowledged that the proper analysis examines the "alignment of interests in the specific case" and carves "a limited exception to this disqualifying interest…when the city or other governmental unit agrees to indemnify the police officer or other employees." *Id.*

defendant would make every effort to determine whether such policies exist, and if so, to vigorously develop evidence of them—not only to make a good faith argument that he is entitled to a qualified immunity defense, but more important, because a successful *Monell* claim would allow Plaintiffs to collect from the municipality rather than from the officer. Likewise, because the financial interests of the Board and the individual Defendants are not aligned, it is in the interest of the Board to argue not only that there was no violation of Plaintiffs' constitutional rights (as they assert they intend to do) but also that, to the extent any such violation occurred, it was not done pursuant to policy. Such an argument would be against the individual Defendants' interests. And the problem with allowing concurrent representation to go forward despite an actual conflict—especially one that was not waived after complete disclosure—is that it is impossible to determine whether a decision not to assert an argument on behalf of one client against another is the result of farsighted strategic thinking exercised independently on behalf of each client, or an improper product of the conflict itself. In other words, defense counsel is asking the Court to take their word for it that they have evaluated and rejected arguments that would appear to benefit their clients for unspecified strategic reasons. That is neither advisable nor permissible, which is why there is an ethical rule that prohibits concurrent representation in these situations.

      Defendants' claim that the individual Defendants are not adverse to one another suffers from the same infirmity. They cite as support the fact that neither Burford nor James testified to facts that undercut each other or other defendants. (Def. Br. at 8–9.) But given the actual conflict made apparent by the declaratory judgment action, of which neither Burford nor James were apprised before their depositions,[4] it is impossible to determine whether a decision not to take a

---

[4] The State notes that Burford's and James's understanding of whether they will be indemnified is that "either the City of St. Louis or the State of Missouri will pay any judgment that might conceivably be entered against them in this case," and that this is consistent with the position taken by the State in its Declaratory Judgment Action. (State Br. at 4.) For the reasons outlined in Part A, *supra*, and in Plaintiffs'

7

position on behalf of one defendant that is at odds with another defendant might be tainted—either consciously or unconsciously—by the counsel's conflicting duties of loyalty. *See, e.g.*, *State ex rel. Horn v. Ray*, 325 S.W.3d 500, 507 (Mo. Ct. App. 2010) ("counsel's duty of loyalty to one client naturally compromises his duty of loyalty to the other."). Defendants' counsel's post-hoc explanations for their strategic choices—including to effectively eliminate the ability of Plaintiffs to collect from Herbert Riley, provide identical discovery responses on behalf of all individual defendants, and the inadequate manner in which opposing counsel prepared Burford and James for their depositions—are all inherently called into question by the conflict.

Defendants further claim that, "even if one of the individual Defendants had information that would inculpate another Defendant…the assertion of a cross-claim by that Defendant would be a questionable strategy at best, as shown by the dearth of such claims in § 1983 practice." (Def. Br. at 9 n.4.) But this argument—like much of Defendants' brief—only makes sense where individual Defendants are all aligned in their interests, as they are in "virtually all" such cases, as noted above. Here, on the other hand, the individual Defendants are not under the same indemnification umbrella, and they have vastly different interests. Given that Riley was the primary questioner during the interrogation that led to Mr. Allen's false confession, Defendant James, the only other questioner in the room, clearly has interests that are adverse to him. Similarly, given that Defendant Criminalist Crow has admitted that his exculpatory forensic testing that resulted in Mr. Allen's exoneration was not disclosed to Mr. Allen's criminal defense counsel, (*see* Brustin Dec. at ¶ 33), James clearly has an interest in arguing that Crow's misconduct made all the difference in this case, both to make it more likely that a verdict will go against Crow as between the two, or to strengthen a claim for contribution, which Missouri law permits, *see Gramex Corp.*

---

initial motion, this is an inaccurate and misleading characterization of the State's and City's positions on indemnification.

*v. Green Supply, Inc.*, 89 S.W.3d 432, 442–43 (Mo. 2002), in the event he is found liable. Once again, because there is an actual conflict of interest, Defense counsel's protestations to the contrary are neither accurate nor credible.

**Conclusion**

By turning this into the rare case where the indemnification of officers is at issue—thereby undermining the integrity of the proceedings and any potential verdict in favor of the Plaintiffs— the State and the Defendants have made this the rare case where disqualification is necessary. Due to the multiple, actual conflicts of interest that may not be waived at this stage, Plaintiffs ask that this motion be granted, absent an agreement by all parties that the individual Defendants will be indemnified regardless of the outcome of the declaratory judgment action filed by the State.

**Dated: June 27, 2016**     **Respectfully submitted,**

  /s/ Nick Brustin
Barry Scheck, *pro hac vice*
Nick Brustin, *pro hac vice*
Emma Freudenberger, *pro hac vice*
Farhang Heydari, *pro hac vice*
Vishal Agraharkar, *pro hac vice*
NEUFELD SCHECK & BRUSTIN, LLP
99 Hudson St., 8th Floor
New York, NY 10013
nick@nsbcivilrights.com

Charles A. Weiss, MO #20299
Ameer Gado, MO #53363
BRYAN CAVE LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
(314) 259-2020 [FAX]
caweiss@bryancave.com
aagado@bryancave.com

ATTORNEYS FOR PLAINTIFFS

GEORGE ALLEN, JR. AND
LONZETTA TAYLOR

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 27, 2016, the foregoing *Reply in Support of Plaintiffs' Motion to Disqualify* was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

                                                 /s/ Nick Brustin
                                                 ATTORNEY FOR PLAINTIFFS